UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 19-00039 (RBW) |
| | : | |
| JOHNNY GRIFFIN CARTER, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM FOR PRETRIAL DETENTION**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant be detained pending trial. Specifically, on February 8, 2019, the government requested that the defendant be detained pursuant to 18 U.S.C. § 3142(d)(1)(A) (ii) and (iii), 18 U.S.C. § 3142(f)(1)(A), 18 U.S.C. § 3142(f)(1)(D), 18 U.S.C. §3142(f)(1)(E), and 18 U.S.C. §3142(f)(2)(A) of the federal bail statute. The government noted at the time that there was a presumption of detention in this case pursuant to 18 U.S.C. §3142(e)(2)(A), 18 U.S.C. §3142(e)(2)(C), and 18 U.S.C. §3142(e)(3)(B). The government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pretrial detention.

**Introduction**

On February 7, 2019, the grand jury returned an indictment charging defendant Carter with one count of Interference with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951, one count of Using, Carrying, Possessing, and Brandishing a Firearm during a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), and one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1) stemming from the armed

robbery of the CVS pharmacy located at 500 12 Street, S.E., Washington, DC, on January 18, 2019.

A rebuttable presumption of detention applies in this case because:

(1) defendant Carter has numerous prior convictions for crimes of violence (*see* 18 U.S.C. §3142(e)(2)(A));

(2) it has been less than five years since defendant Carter was released from imprisonment for a conviction of a crime of violence (*see* 18 U.S.C. §3142(e)(2)(C)); and

(3) defendant Carter is charged with the use of a firearm in a crime of violence in violation of 18 U.S.C. § 924(c) (*see* 18 U.S.C. § 3142(e)(3)(B)).

For the reasons set forth below, the defendant cannot overcome the rebuttable presumption in favor of detention and should be held without bond pending trial.

## Procedural History and Applicable Authority

On February 7, 2019, the defendant was indicted in case number 19-cr-00039 (RBW). On February 8, 2019, the defendant appeared before Magistrate Judge G. Michael Harvey for his initial appearance in this case. Magistrate Judge Harvey granted the government's Motion for Temporary Detention and scheduled a detention hearing on February 13, 2019.

The government contends that the defendant is a flight risk as well as a danger to the community. The government must establish by preponderance of the evidence that a defendant poses a risk of flight. *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986). And must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). In an indicted case at a detention hearing,

the government may proffer evidence. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

There are four factors under Section 3142(g) that the Court should consider and weigh in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). A review and understanding of the facts and circumstances in this case causes the government to ask the Court to conclude that there are (1) no conditions or combination of conditions that would assure the safety of the community; (2) no information in the defendant's personal background and characteristics that would serve as a basis to rebut the presumption of dangerousness; and (3) the defendant poses a significant risk of flight in light of his history, characteristics, and the potential sentence in this case. Therefore, the defendant should be detained pending trial.

## Nature and Circumstances of the Charged Offenses

With the assistance of two other men, the defendant used a pistol to rob the CVS located at 500 12th Street, S.E., Washington, D.C., as well as two customers inside the store at approximately 9:45 p.m. on January 18, 2019. Surveillance video from various locations captured the lead-up to the robbery, the robbery itself, and the men's escape. At around 9 p.m. on January 18, 2019, a black sport utility vehicle, which appeared to be a Chevrolet Equinox, parked in the 1200 block of E Street, S.E., approximately a half block from the CVS. A few minutes later, the right rear passenger (S-2) exited the Equinox and went into the CVS but did not buy anything. He then returned to the Equinox. His face, build, and clothing were clearly

visible on the video from the CVS.

The front passenger, who is the defendant based on the totality of the evidence described herein, subsequently exited the vehicle wearing black, somewhat distinctive work boots. He was also wearing pants that had distinctive reflective stripes at the bottom of the pants. The defendant approached the CVS multiple times without entering the store. He eventually walked past the CVS entrance and left the view of any known video before finally returning to the Equinox at approximately 9:14 p.m.

In the interim, S-2 went back into the CVS again, picked up a bottle of mouthwash, and went to the checkout counter but ultimately did not purchase it and placed it back on the shelf. S-2 then returned to the Equinox.

At approximately 9:43 p.m., the defendant exited the Equinox wearing a face mask that covered approximately half of his face until he apparently adjusted it to cover everything but his eyes. He moved quickly to the CVS and entered the CVS brandishing a nickel-plated or chrome-plated revolver that appeared to be of a large caliber. The defendant's face was not visible on video, but he was wearing the same distinctive clothing. He approached the cashier and pointed the revolver at her and threatened to shoot her as he instructed the cashier to open the register. The defendant reached across the counter and took the cash register tray containing approximately $185 in currency. There were two customers in the CVS at the counter, standing next to the defendant. The defendant ordered them to the ground and stole their purses. The defendant then rushed back to the Equinox.

As the defendant approached the vehicle carrying the purses and cash tray, the vehicle's headlamps turned-on as if the driver was starting the car. The defendant entered the vehicle, and

4

the Equinox left the scene.

Investigator Brian McCarthy of the Metropolitan Police Department spoke with one of the customers who had been robbed.  The customer told Inv. McCarthy that her smartphone had been stolen and could be tracked.  Inv. McCarthy met with the customer, whose Google account illustrated the path of the phone following the robbery.  The phone's signal traveled from the CVS to a parking lot in front two connected apartment buildings located at 5055 and 5057 Astor Place, S.E., Washington, D.C.  The tracking function located the phone's last signal within a circular, geographic range, with the center of the "tracking circle" being over the north side of 5057 Astor Place, in the general location of what was later determined to be the defendant's apartment.[1]  The timeline of the track along with the elapsed time, which was approximately 14 minutes, was consistent with the phone being taken from the CVS to Astor Place at the time of the robbery.

Investigator McCarthy retrieved video surveillance from the apartment building and checked the system time against the actual time, noting that it was approximately seven minutes fast.  Adjusting for that discrepancy, the video showed a dark-colored sports utility vehicle, which appeared to be the same vehicle from the CVS, arriving in the parking lot at approximately 9:59 p.m., which corresponded to the phone tracking function.  The vehicle parked and three men exited the vehicle (the driver being S-3).  The defendant, still wearing the pants with the distinctive stripes, led the three men to the door of 5057 and opened the door in a motion consistent with using a key (the building has a locked door).  The three men entered the

---

1     5055 and 5057 Astor Place, S.E., is a "joined" apartment building with 13 units in 5057 Astor Place.

5

building.  A short time after that, three men exited the building who appeared to be the same three men as before.  The defendant was wearing the same distinctive pants, and all three of them eventually returned to the same vehicle in which they arrived, albeit at different times.  At first, the defendant appeared to be speaking on a cell phone.  The other two men got back into the Equinox and began to drive out of the parking lot.  The defendant approached the driver's side of the Equinox and appeared to speak with the driver.  The defendant returned to the apartment building.  The Equinox moved forward several feet and stopped.  The front passenger exited the vehicle and threw a rectangular-shaped, dark-colored object into the dumpster near the entrance of the parking lot.  Subsequently, the police recovered the cash register tray stolen from the CVS from the dumpster.

     Investigator McCarthy learned from a witness that defendant Carter was an associate of S-3.  The witness jointly owns a black Chevrolet Equinox with S-3.  Additionally, that witness told police that S-3 had recently associated with three individuals: "Tre," "Steve," and "Snook."  In connection with a Prince George's County search warrant, police searched the contacts in S-3's phone and located a phone number for "Snook Big Dc Homy."  Police ran that phone number through law enforcement databases that linked the number to the defendant and a second person, both of whose addresses were listed as 5057 Astor Place, Apartment 302.

     On January 25, 2019, the police went to the defendant's apartment to execute a search warrant.  As the officers approached the building, they encountered the defendant, who appeared to Inv. McCarthy to be S-2 at first glance.[2]  Police detained the defendant, who was wearing the

---

2    At that time, Inv. McCarthy had never met the defendant or S-2, both of whom share similarities in height and skin tone.

same pants with the distinctive stripes that he had been wearing on the night of the robbery. The black boots he was wearing also appeared to be the same boots that he wore during the robbery. The police photographed the bottom of the boots, which had a distinctive tread. Inv. McCarthy had photographed some boot impressions in the snow on the night of the robbery near the location where the Equinox had been parked and those impressions were consistent with the tread of the defendant's boots (there were also boot prints near where the Equinox had been parked that were not consistent with the defendant's boots). Police arrested the defendant and found a facemask and BB gun in his possession.

Defendant was taken into custody and interviewed by Inv. McCarthy and Detective Lin of the Prince George's County Police Department, who was investigating robberies similar to the robbery of the CVS, which included a CVS robbery in Prince George's County. During the interview, the defendant denied participating in the robberies. The defendant also identified the gunman, depicted in still-frame photographs from the CVS video, as "Tre," despite the fact that the gunman's face was covered entirely except for grainy images of his eyes. The defendant also admitted to knowing S-3.

At another point in the interview, Det. Lin was questioning the defendant about the robberies and stated that he knew the defendant was not at the CVS robbery in Prince George's County. He then asked about other robberies. Inv. McCarthy - - who had been questioning the defendant about the CVS robbery in Washington, D.C. - - asked the defendant a question to the effect of, "What about the CVS robbery?" The defendant again denied involvement but stated, "The gun is real," apparently referring to the revolver depicted in the video of the robbery. The defendant later described the revolver as a .44 magnum and stated where he had last seen it. The

7

police searched that location and recovered five rounds of .45 caliber ammunition, which is consistent with the amount of rounds that a large-caliber revolver would hold.[3]

## Weight of the Evidence against the Defendant

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. The evidence against the defendant is strong. He admitted that he had seen the revolver used in the robbery and made other statements that indicated his knowledge of the robbery. He had access to a vehicle resembling the vehicle used for the robbery and was associated with the operator of that vehicle. The proceeds of the robbery - - the stolen smartphone and the cash register tray - - were traced to, or located in or near, his apartment. When he was arrested, he was wearing the distinctive clothing that is seen in the robbery surveillance video. Furthermore, the man in the videos was the one who had a key to access the locked apartment building, as the defendant would have given his residence in the building.[4]

## Defendant's History and Characteristics

As noted in the Pretrial Services Agency report, the defendant has twelve prior convictions, 34 prior arrests, and two bench warrants. He is also the defendant in a pending case where he is charged with Possession With Intent to Distribute Heroin.

The defendant's prior convictions are listed herein:

---

3   The government will also orally proffer additional information at the detention hearing, which may be presented at the bench. The government will inform defense counsel by email the nature of that proffer before the detention hearing.

4   As noted in footnote 3, the government will be proffering additional information at the detention hearing.

| Offense | Jurisdiction | Year |
| --- | --- | --- |
| Identity Theft | Fairfax Co., VA | 2015 |
| Threats to Do Bodily Harm-Misd. | WDC | 2013 |
| Robbery<br>Using of Handgun | Montgomery Co., MD | 2002 |
| Robbery<br>1st Degree Assault<br>Carrying Dangerous Weapon | Prince George's Co., MD | 2001 |
| Armed Robbery | Howard Co., MD | 2000 |
| Escape | WDC | 1999 |
| Robbery with Deadly Weapon<br>Use of Handgun | Prince George's Co., MD | 1988 |
| Theft | Prince George's Co., MD | 1988 |
| Assault with a Dangerous Weapon-Gun | WDC | 1987 |
| UUV<br>Attempt UUV<br>BRA-Misd. | WDC | 1987 |
| Theft<br>Assault (2 counts) | Prince George's Co., MD | 1986 |

As can be seen from above, defendant has a criminal history stretching back over 30 years. Not only is he a recidivist, he is a dangerous recidivist with multiple convictions for crimes of violence.

## **Danger to the Community**

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendants' release, also weighs in favor of detention. The actions of

the defendant pose a danger to the community: he brandished a large-caliber revolver and pointed it directly at a cashier and threatened to shoot her if she did not comply with his demands.

As noted above, because the defendant has prior convictions for prior crimes of violence and less than five years has elapsed since his release from imprisonment in a violent crime case -- apparently his 2000 and 2001 robbery convictions in Maryland. Accordingly, if the Court finds that this is correct, there is "a rebuttable presumption . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. §3142(e)(2)(A) and (C).

Additionally, pursuant to §3142(e)(3)(B), "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed" a violation of 18 U.S.C. § 924(c), which the defendant is charged with in the indictment.

By itself, an indictment establishes that probable cause and triggers the presumption. *See*, *e.g., United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) ("the indictment alone would have been enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community").

Once a rebuttable presumption has been triggered, "the presumption operate[s] at *a minimum* to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption" *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985) (emphasis in original); *see also United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985)

(the presumption in § 3142(e) "are 'rebutted' when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"), quoting *United States v. Dominguez*, 783 F. 2d 702, 707 (7th Cir. 1986); *United States v. Rodriguez*, 950 F. 2d 85, 88 (2d Cir. 1991) ("[A] defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption."), citing *United States v. Matir*, 782 F.2d 1141, 1144 (2d Cir. 1986). While the burden of production may not be heavy, *see Unites States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991), the applicable cases all speak in terms of a defendant's obligation to introduce "evidence." Moreover, even if the defense does submit such evidence, the presumption remains as a factor that may be considered by the Court, among others, in determining whether the defendant should be detained, and the presumption retains "evidentiary weight." *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991) ("When a defendant produces such evidence, however, the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight") (citations omitted).

As the court explained in *United States v. Ali*, 793 F. Supp. 2d 386 (D.D.C. 2011), even if the defendant offers evidence to counter the presumption, the presumption does not disappear entirely:

> At oral argument, defendant's counsel posited that the rebuttable presumption function as a "bursting bubble" that ceases to exist once a defendant produces any credible evidence. Although the D.C. Circuit has not expressly ruled on this issue, circuits that have considered the issue require using the presumption as a factor even after the defendant has produced credible evidence as do judges of this Court.

*Id*. at 388 n.2 (internal citations omitted), citing *United States v. Bess*, 678 F. Supp. 929, 934

(D.D.C. 1988) ("[The presumption] is incorporated into the § 3142(g) factors considered by the court when determining whether conditions of release can be fashioned or whether the defendant must be detained pretrial."); *see also United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("Even when a defendant satisfies his burden of production, however, 'the presumption favoring detention does not disappear entirely but remains a factor to be considered among those weighed by the district court.'"), quoting *United States v. Mercedes*, 254 F. 3d 433, 436 (2d Cir. 2001); *Portes*, 786 F. 2d at 764 ("[Use] of [the word rebutted] in this context is somewhat misleading because the rebutted presumption in not erased. Instead, it remains in the case as an evidentiary finding militating against release, to be weighted along with other evidence relevant to factors listed in §3142(g)."), quoting *Dominguez,* 783 F. 2d at 707.

> As the US. Court of Appeals for the Sixth Circuit has explained:
>
> > The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial. To rebut the presumption, therefore, a defendant should "present all the special features of his case" that take it outside "the congressional paradigm."

*Stone*, 608 F.3d at 945-46 (internal citations omitted), quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985).

However, in the end, while the presumption operates to shift the burden of production, it does not alter the government's statutory burden of persuasion, which is consistent with the presumption of innocence. *Portes*, 786 F.2d at 764. "Regardless of whether the presumption applies, the government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community." *Stone*, 608 F.3d at 946.

**There is No Condition or Combination of Conditions that Would Ensure the Defendant's Compliance with Court-Ordered Release Conditions**

The weight of the evidence and the gravity of the alleged offenses provide compelling justification for the continued detention of the defendant until this case is resolved. Given all of these facts and circumstances discussed above, the defense simply cannot present evidence sufficient to overcome the statutory presumption that the defendant should be held without bond.

WHEREFORE, the Government requests that the Court order the defendant be detained pending trial.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar No. 472-845

By:     /s/
THOMAS P. SWANTON
D.C. Bar No. 462144
Assistant United States Attorney
555 Fourth Street, N.W., Fourth Floor
Washington, D.C. 20530
Telephone: (202) 252-7063
E-mail: thomas.swanton@usdoj.gov